The opinion of the court was delivered by
Watkins, J.
Alleging itself to be a corporation organized under and by virtue of a law of this State, for the purpose of erecting and operating grain elevators, warehouses, etc., for the storage of grain and other commodities, with authority to erect one or more wharves, grain and flour elevators, etc., upon property it had acquired upon the front of the Mississippi, they institute suit against the city upon the following grounds, viz.:
That subsequent to its organization the council of the city granted it permission to build a wharf equal to any then existing in the city, which was to occupy 276 feet of the river bank, and to build into the river to a sufficient distance to be in twenty feet of water at a low stage; said wharf to be built and kept in repair at the expense of the company, and under the supervision of the city surveyor.
*1352 That by the fourth section of the ordinance which granted the aforesaid permission, it was among other things provided that when the company should discontinue its operations, the said- wharf should revert to the city at a valuation tobe fixed by two disinterested parties, one to be appointed by the city and the other to be selected by the company; and in the event of a disagreement between them as to the proper valuation to be placed upon the wharf, an umpire should be appointed by one of the Civil District Courts of the parish of Orleans.
That subsequently the City Council extended the privileges-of the corporation for a period of ten years, by an ordinance adopted on the 6th of September, 1883, so as to provide that both the wharves and the mooring posts, etc., should revert to the city, at a valuation to be fixed as before indicated.
That shortly before the termination of its franchise the company gave due notice to the mayor of the city to that effect, and that it had selected and appointed its representative for the purpose of assisting in making an appraisement such as the city ordinances contemplated, and that he would be prepared to act as soon as he was advised by him that he had appointed an appraiser to act on the part of the city.
That the mayor was tardy in giving attention to the matter, and only made the selection of an appraiser several months afterward, and when appointed, the two appraisers failed to agree as to the proper valuation to be placed upon the company’s wharves, mooring posts, etc., the appraiser appointed for the city declaring that the wharf and appurtenances were of no commercial value to the city. That the court appointed an umpire, who, after a superficial examination of the wharf, made a report to the effect that on account of long service the wharf had become practically useless for commercial purposes, thus aligning his report with that of the appraiser selected by the mayor.
That- after filing a formal protest with the mayor, the company instituted this suit, praying for judgment annulling and revoking th-e report of the arbitrators, and condemning the city to pay it the sum of two thousand two hundred dollars as the value of the wharves, etc.
The defences raised in the answer are, (1) no cause of action, on the ground that there is nothing in the law or in the agreement between the parties which makes it obligatory on the city to accept or *1353 receive the reversion of the company’s wharves, etc.; (2) that under the terms of the city ordinance which the plaintiff invokes, it had contracted and .agreed that it would build for the city one thousand five hundred dollars’ worth of intersection paving, with which contract the company failed to comply altogether. On that score the city prays for judgment accordingly.
On the trial there was judgment in favor of the defendant, rejecting the plaintiff’s demands, and the latter appealed.
The written report of the umpire, at which this suit is chiefly directed, is annexed to the plaintiffs’ petition for reference; and as it is the succinct embodiment of the facts upon which defendant relies, we will state its purport, which is as follows, viz.:
That, having met the two arbitrators and heard their respective statements with reference to the valuation of the company’s wharf, etc., he accompanied them to the loo us in quo and with them made a careful examination of the wharves and mooring posts, and found that, in his judgment, “from long service and want of repair, they had become utterly useless for any commercial purpose. The piles upon which they had been erected (were), with a few exceptions, rotten ; and the cribbing (had) in many places been strengthened, when found wanting, with pieces of light timber. In fact, the wharves seem to have been kept up, in view of its reversion to the city, at the smallest expense to the company; and by want of care and repair has become of no value whatever.
“That, for the greater part, the mooring posts were of no value or use, unless taken in connection with the worthless wharf to which they are attached; and, in the reconstruction of the wharf, it will be necessary to remove them, thereby creating an expense instead of a benefit to the city,” etc.
“That the cluster-piles, the only ones which can be considered of any value, are far within the river line of the new wharf which is to be erected at that point, and (that in its construction) they, as well as the others, will have to be removed, and will therefore be of no value to the city,” etc.
That “ the lumber or material used in the construction of the wharf * * * is of no value at present, and as may be seen,” etc.
With some additional elaboration of statement which is needless to detail, he closed and signed his report.
On the part of the plaintiff the company’s expert was introduced *1354 as its principal witness, and his statement, in his own words, is that “ the wharf was in such condition that the Elevator Company could do business on it. It was not a new wharf. We found some timbers which were slightly rotten on the outside, but inside they were all sound. I found the piles in good condition. I think the wharf was worth about one half the cost of a new wharf,” etc.
One of the company’s employees, a weigher, supports the statement of the expert, in a general way. Three or four witnesses made similar statements, but their information was chiefly derived from casual observation. The secretary of the company testifies to the general good condition of the wharves, stating that after repairs had been made “ it was in perfect order.” And that when once in good order it so remains for about ten years.
On the part of the defendant, the mayor’s expert was introduced as a witness and made a statement of facts corresponding with the umpire’s report, and affirming the utter worthlessness and rottenness of the wharf,” etc. In fine his statement is that he “considered the wharf of no commercial value to the city, on account of the general condition of the lumber and the way it was put up.”
In speaking of the interview and discussion which took place between himself and the expert of the company, he stated most positively and unqualifiedly that the latter had offered him a bribe of five hundred dollars if he (the witness) would join him in making a report favorable to the company.
He repeated the statement, and said:
Q. There is no mistake about the fact that the offer was made?
A. No, sir; it was an unqualified proposition to give me five hundred dollars if I would consent to make that report.
Q. Of course you did not accept the offer?
A. No.
The testimony of the umpire was taken, and its purport is the same as his report.
The testimony of one of the wharf lessees and of the city engineer was taken, and it is of the same tenor.
In rebuttal the plaintiff introduced three witnesses, but the company’s appraiser did not take the stand or deny the damaging charge which the defendant’s appraiser made against him.
From the reasons assigned by the judge-a quo for this ruling, it appears that he rested his judgment exclusively upon the fact that *1355 the company’s expert had offered a bribe to defendant’s appraiser to induce him “ to concur in a corrupt and false appraisement.”
No doubt that this circumstance was entitled to great weight in making an estimate of that witness’ testimony, but it should not have exercised any further influence upon the decision of the plaintiffs’ case.
But upon other grounds entirely independent of the testimony of that expert, we are of opinion that the judge a quo correctly decided the case in favor of the defendant, and the chief reason for this statement is that the great preponderance of the evidence is on the side of the defence.
Judgment affirmed.
Nicholls, C. J., absent.